## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————
JULETTE DAVIS,                                      )
                        Plaintiff,                  )
        v.                                          )        Civil Action No. 11-171 (AK)
DISTRICT OF COLUMBIA,                               )
                        Defendant.                  )
—————————————————————————)

### MEMORANDUM OPINION

This matter is pending before this Court on Plaintiffs' Motion for [summary judgment on the issue of] Fees and Costs ("Fee Motion") and Memorandum in support thereof ("Memorandum") [10]; Defendant's opposition to the Motion ("Opposition") [11]; and Plaintiff's reply to the Opposition ("Reply") [12].[1]  Plaintiff Julette Davis ("Plaintiff") has requested $2,377.50 in legal fees and costs.  Defendant District of Columbia ("Defendant" or "the District") contests Plaintiff's prevailing party status and asserts that Plaintiff is not entitled to recovery of any legal fees or costs. (Opposition, Exh. 1 [Defendant's chart of proposed allowable fees and reasons for fee reductions].)

### I. BACKGROUND

Plaintiff is the parent of a minor child who was the subject of an administrative action brought pursuant to the Individuals with Disabilities Education Act and the Individuals with Disabilities in Education Improvement Act ( collectively "IDEA"), 20 U.S.C. § 1400 *et seq.* Pursuant to 20 U.S.C. §1415(i)(3)(B), a court may award attorney's fees to a parent who prevails in an IDEA proceeding.  Prior to filing this civil action, the Plaintiff participated in a December 18, 2007 due process hearing wherein the Hearing Officer identified the following issue to be

—————————————

[1]This same Fee Motion is filed in multiple cases involving claims for attorneys' fees and costs; the Plaintiff in this action is Julette Davis.

considered: "[w]hether DCPS denied the student FAPE and failed to convene a compensatory education meeting following the Petitioner's request." (December 19, 2007 Hearing Officer Determination ("HOD") at 3, attached to Notice of Removal [1].)  The Hearing Officer concluded that:

> 1) Pursuant to the Blackman-Jones Consent Decree, members of the class may file a due process complaint when they are dissatisfied with the resolution of a request for compensatory education at an IEP meeting or by Central Administration Personnel.
> 2) Petitioner failed to meet the burden of proof to establish that the alleged procedural violations impeded the child's right to a FAPE; significantly impeded the parent's opportunity to rights afforded by the IDEA 2004, or caused a deprivation of educational benefit.

(December 19, 2007 HOD at 3.)   The Hearing Officer *inter alia* ordered DCPS to "provide written notice to the attention of [counsel for Plaintiff], proposing at least three separate dates and times to convene an IEP/compensatory education meeting within ten days . . . ." (December 19, 2007 HOD at 3.)  The Hearing Officer further ordered that "if DCPS fails to convene an IEP/compensatory education meeting pursuant to this HOD, then DCPS shall fund the Petitioner's compensatory education plan."  (*Id.*)

Plaintiff originally filed her complaint for legal fees and costs with the Small Claims and Conciliation Branch of the Superior Court of the District of Columbia.  Defendant removed this and other simultaneously filed cases to this Court and the parties subsequently consented to the referral of all such cases to the undersigned Magistrate Judge for all purposes.  The parties were directed to brief the issues in these cases in the form of motions for legal fees and responses thereto.

## II. LEGAL STANDARD

### A. Prevailing Party

The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party. 20 U.S.C. §1415(i)(3)(B). An action or proceeding under IDEA includes both civil litigation in federal court and administrative litigation before hearing officers. *Smith v. Roher*, 954 F. Supp. 359, 362 (D.D.C. 1997); *Moore v. District of Columbia*, 907 F.2d 165, 176 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 998 (1990). A party is generally considered to be the prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit sought in bring suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The Supreme Court has indicated that the term "prevailing party" does not include a plaintiff who "fail[s] to secure a judgment on the merits or a court-ordered consent decree." *Buckhannon Bd & Care Home, Inc. v. West Virginia Dep't Health & Human* Resources, 532 U.S. 598, 606 (2001). The Supreme Court therefore rejected the "catalyst theory" whereby a plaintiff would be a prevailing party if the lawsuit brought about the desired result through a voluntary change in the defendant 's conduct. 532 U.S. at 605. The Supreme Court instead determined that a prevailing party must obtain a "material alternation of the legal relationship of the parties." *Id.* at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). *See also District of Columbia v. Straus*, Civil Action No. 09-7051, 2010 WL 45932, at *2 (D.C. Cir. Jan. 8, 2010) ("the term 'prevailing party' [is] a legal term of art" that requires more than achieving the desired outcome; the party seeking fees must also have "been awarded some relief by the court.") (quoting *Buckhannon*, 532 U.S. at 603.) The

standards in *Buckhannon* apply to administrative hearings under the IDEIA even though the

relief granted is administrative as opposed to judicial. *Abarca v. District of Columbia*, Civil

Action No. 06-1254, 2007 WL 1794101 *2 n.1 (D.D.C. June 19, 2007).

## **B. Fee Requests**

The plaintiff has the burden of establishing the reasonableness of any fee requests. *See*

*In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995); *Covington v. District of Columbia*, 57 F.3d 1101,

1107 (D.C. Cir. 1995) ("[A] fee applicant bears the burden of establishing entitlement to an

award, documenting the appropriate hours, and justifying the reasonableness of the rates.")  "An

award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of

hours reasonably expended on the case." *Smith*, 954 F. Supp. at 364 (citing *Hensley v.*

*Eckerhard*, 461 U.S. 424, 433 (1983)); *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  The result of

this calculation is the "lodestar" amount. *Smith*, 954 F. Supp. at 364.

20 U.S.C. §1415(i)(3)(C) states that "[f]ees awarded under this paragraph shall be based

on rates prevailing in the community in which the action or proceeding arose for the kind and

quality of services furnished." 20 U.S.C. §1415(i)(3)(C).  To demonstrate a reasonable hourly

rate, the fee applicant must show: an attorney's usual billing practices; counsel's skill,

experience and reputation; as well as the prevailing market rates in the community. *Covington*,

57 F.3d at 1107.  The determination of a "market rate for the services of a lawyer is inherently

difficult" and is decided by the court in its discretion. *Blum*, 465 U.S. at 896 n.11. "To inform

and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce

satisfactory evidence . . . that the requested [hourly] rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and

reputation." *Id.* An attorney's usual billing rate may be considered the "reasonable rate" if it accords with the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation. *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993).

A party moving for summary judgment on legal fees accordingly must demonstrate prevailing party status and the reasonableness of the fees requested in terms of hours spent and hourly rate. Under Fed. R. Civ. P. 56 (a), summary judgment shall be granted if the movant shows that there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The court is required to draw all justifiable inferences in the nonmoving party's favor and to accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. The nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. Nor may the non-moving party rely on allegations or conclusory statements; instead, the non-moving party is obliged to present specific facts that would enable a reasonable jury to find it its favor. *Greene v Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### III. ANALYSIS
### A. Prevailing Party

Defendant argues that the Plaintiff in the instant case is not a prevailing party because the Hearing Officer did not find a denial of FAPE and allegedly awarded only *de minimus* relief. (Opposition at 7-9.) Plaintiff's underlying administrative complaint asserted that "DCPS had

failed to meet to determine compensatory education as required by law." (Reply at 2; *see* HOD

at 2.) While the Hearing Officer indicated that Plaintiff did not meet the burden of proof "to

establish that the alleged procedural violations impeded the child's right to a FAPE[,]" he did

order DCPS to convene an IEP/compensatory education meeting "to discuss and determine the

amount, form and delivery of compensatory education due to the student." (HOD at 3.)  The

Hearing Officer further noted that, if DCPS failed to convene the IEP/compensatory education

meeting, it would have to fund a plan developed unilaterally by the Plaintiff.  (*Id.*)

    Plaintiff argues that "the IDEA explicitly allows for relief for a parent in the absence of a

finding of denial of FAPE."  (Reply at 3); *see* 20 U.S.C. §1415(f)(3)(E)(iii) (hearing officer may

order procedural compliance with law regardless of whether FAPE has been denied).  This court

has previously held that statements by a hearing officer are not determinative of prevailing party

status.  *See Artis ex rel. S.A. v District of Columbia*, 543 F.Supp.2d 15, 22 (D.D.C. 2008)

("Although a hearing officer may make a prevailing party determination, it is the province of the

district court to make the ultimate decision as to who prevailed in an IDEA action.") (citation

omitted).  *See also T.S. ex rel. Skrine v. District of Columbia*, Civil Action 08-861, 2007 WL

915227 (D.D.C. Mar. 27, 2007) (noting that "[t]he fact that a hearing officer has made a finding

on the issue, or has failed to make such a finding, is not controlling")

    "[N]either a hearing officer's conclusion that DCPS was a prevailing party, nor his

determination that DCPS did not deny the student a FAPE, requires this court to consider DCPS

the prevailing party."  *Bush ex rel. A.H. v. District of Columbia*, 579 F. Supp.2d 22, 30 (D.D.C.

2008) (internal citations omitted).  In *A.H. v. D.C.*, the plaintiff requested that the Hearing

Officer conclude that DCPS denied her child a FAPE and order DCPS to convene an IEP

meeting to discuss compensatory education and determine an interim placement.  579 F.Supp.2d at 31.  The Hearing Officer concluded that DCPS had not denied the child FAPE but did order DCPS to convene an IEP meeting to complete the IEP and determine placement.  *Id.* at 31.  The court found that the Hearing Officer "granted the substance of the plaintiff's [ ] request" and the court further held that the plaintiff succeeded on the merits and was the prevailing party at the due process hearing. *Id.*  at 31-32.

Compare *Robinson v. District of Columbia*, Civil Action No. 06-1253, 2007 WL 2257326 at *4 (D.D.C.  Aug. 2, 2007) (If the [hearing officer] does not find a denial of a [FAPE], this does not necessarily mean that the plaintiffs cannot seek attorney's fees, but recovery is limited."); *A.S. v. District of Columbia*, Civil Action No. 10-1670, 2012 WL 291349 *5 (D.D.C.  Feb. 1, 2012) (finding that with a plaintiff who achieves partial success, the court may identify specific hours to be eliminated or reduce the award to reflect that limited success because it is the "the *degree* of the plaintiff's success that is the critical factor to the determination of the size of a reasonable fee.") (citing *Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 786 (1989)).

"The essential test for prevailing party status is whether a party successfully obtains a 'material alteration of the legal relationship of the parties' with the imprimatur of an adjudication." *Skrine*, 2007 WL 915227, at *4 (quoting *Buckhannon*, 532 U.S. at 604).  Defendant in this case argues that the showing is not met where the Hearing Officer does not find a denial of FAPE and the Plaintiff only obtains minimal relief.  *See Abarca v. District of Columbia*, 2007 WL 1794101, at *3 (D.D.C. June 19, 2007) (denying prevailing party status under these circumstances).  Plaintiff contends that the court in *Abarca* specifically noted that

prevailing party status "depends more on whether [plaintiff] has obtained his primary objective in seeking an administrative hearing" than the Hearing Officer's decision on denial of FAPE. 2007 WL 1794101 at *3. Plaintiff asserts that, in this case, she "requested an exchange of information regarding particular compensatory education, and . . . she obtained not only a meeting for that information exchange [but also] the power to unilaterally determine a final award if the meeting were not held." (Reply at 5.)

This Court finds that Plaintiff did accomplish her primary objective at the administrative hearing, demonstrated by Hearing Officer's order that DCPS convene an IEP/compensatory education meeting "to determine the amount, form and delivery of compensatory education to the student." (HOD at 3.)[2]  Accordingly, the Court finds that Plaintiff is a prevailing party and further, that she is entitled to recover fees and costs. While the Hearing Officer did not find a denial of FAPE, the Court notes that such determination would be premature in the instance where a petitioner is moving for an IEP/compensatory education meeting, which necessarily precedes the determination of compensatory education due to a student.

## B. Reasonableness of Hourly Rates[3]

Plaintiff seeks fees for the services of two lawyers and two paralegals, to be paid at the following rates: $475.00 per hour for Douglas Tyrka, an attorney with approximately 8-10 years experience during the relevant time period; $268.00 per hour for Zachary Nahass, an attorney

---

[2]The Hearing Officer also ordered that DCPS would fund the Petitioner's compensatory education plan if it failed to convene the meeting. (HOD at 3.)

[3]The District did not specifically question the reasonableness of the counsel's hourly rates on its Chart attached as Opposition, Exh.1 because it was relying on its argument that Plaintiff was not a prevailing party. The District's Opposition does however contain argument that the hourly rates applied by Plaintiff's counsel in IDEA cases are excessive.

with approximately 1-2 years experience during the relevant time period, and $146.00/$150.00 per hour for Patrick Meehan and Camille McKenzie, who were paralegals with the firm Tyrka & Associates during that same period of time.[4] (Plaintiff's Itemization of Fees/Expenses, attached to Notice of Removal [1]; Fee Motion, Exh. 2 [Verified Statement of Douglas Tyrka] ("Tyrka")] ¶¶ 8 -11, 15.)  According to Tykra's Verified Statement ("Verified Statement"), "[t]he hourly rates in the itemization are the rates Tyrka & Associates has customarily charged."  (Exh. 2 ¶4.)

Tyrka further asserts that "clients have retained Tyrka & Associates with the understanding and agreement that the client would retain full responsibility for all fees regardless of what was reimbursed by third parties, at rates consistent with 'the *Laffey* [M]atrix' as adjusted per the finding in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000), and other cases."  (Exh. 2 ¶4.)[5]  Plaintiff relies upon the rates set forth in the "enhanced" *Laffey* Matrix in her request for attorney's fees but Tyrka's Verified Statement does not indicate how

---

[4]The law firm's hourly rate for paralegal charges occurring after May 31, 2008 increased from $146/hour to $150/hour, even though the "enhanced" *Laffey* Matrix rates increased from $146/hour to $152/hour during that same time

[5]The *Laffey* Matrix is "a schedule of charges based on years of experience" developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), as modified by *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988).  The *Laffey* Matrix was first developed based upon information about the prevailing rates charged for complex federal litigation in the District of Columbia, and it is maintained by the United States Attorney's Office for the District of Columbia and is updated annually to reflect increases in the local Consumer Price Index.  *See Laffey* Matrix - 2003-2012, n.3, *available at:* http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf.

The "enhanced" *Laffey* Matrix is a schedule of fees based on the original *Laffey* Matrix, with adjustments to reflect increases in the national Legal Services Index, prepared by the United States Bureau of Labor Statistics.   (Fee Motion, Exh.3.)

frequently Plaintiff's counsel is paid at these "enhanced" *Laffey* rates.[6]  Nor has counsel

presented affidavits attesting to the actual billing rates of lawyers who do similar IDEA work.

Furthermore, the Plaintiff has not provided specific information about the nature or complexity

of the IDEA administrative work performed in this case.

Plaintiff asserts that in order to demonstrate prevailing market rates, she may "point to

such evidence as an updated [enhanced] version of the *Laffey* Matrix or the U.S. Attorney's

Office ["USAO"] Matrix, or [her] own survey of prevailing market rates in the community."

(Memorandum in support of Fee Motion ("Memorandum") at 8 (citing *Covington*, 57 F.3d at

1109 (additional citation omitted))).  In the *Covington* case, which involved allegations of civil

rights violations, the Court of Appeals for the D. C. Circuit did look to *Laffey* rates for prevailing

market rates but the relevant market therein was "complex federal litigation,"  57 F.3d at 1110.

In contrast, this case involves IDEA litigation, which is *not* complex federal litigation because

most if not all of the attorney's fees in question are the result of counsel's preparation for

attendance at routine administrative hearings.  Accordingly, the *Laffey* Matrix rates are

inapplicable as prevailing market rates.

Plaintiff additionally relies upon *Rooths v District of Columbia*, Civil Action No. 09-

0492, Report and Recommendation of March 31, 2011, and *Friendship Edison Pub. Charter*

*Sch. v. Suggs*, Civil Action No. 06-1284, Motion for Attorneys' Fees of July 10, 2008 and

---

[6]*See generally MacClarence v. Johnson*, 539 F.Supp.2d 155, 160 (D.D.C.
2008)(expressing concern that "standardized hourly rates overcompensate lawyers whose
practices are contingent fee based and therefore compensated at an hourly rate they never charge
and none of their clients could pay").

Memorandum Opinion of March 30, 2009 at 5-8. (Fee Motion, Exhs. 5-7).[7] According to

Plaintiff, in these two IDEA cases litigated in this United States District Court, the firm's clients

received an award of fees "based on rates exactly in line with those presented here, . . . "

(Memorandum at 8.)

  As a preliminary matter, this Court notes that the mere showing that a high hourly rate

was approved in another case does not in and of itself establish a new market rate or prove that

the new rate is reasonable.  Furthermore, Plaintiff's reliance on *Rooths v District of Columbia*,

Civil Action No. 09-0492, Report and Recommendation of March 31, 2011 at 10-11 (Fee

Motion, Exh. 5), is misplaced because the trial court ultimately rejected the application of

enhanced *Laffey* rates, applied *Laffey* Matrix rates as a starting point, and then reduced those

rates by 25%.  *Rooths v District of Columbia*, 802 F.Supp.2d 56, 63 (D.D.C. 2011).

  In *Rooths*, the Honorable Paul L. Friedman noted that "[i]n this circuit, the rates

contained in the *Laffey* Matrix are typically treated as the highest rates that will be presumed to

be reasonable when a court reviews a petition for statutory attorneys' fees."  802 F Supp. 2d 61.

The trial court declined "to approve as reasonable the inflated rates contained in a proposed

alternative fee matrix."  *Id.*; *see Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 176

(D.D.C. 2010) (in determining prevailing market rates, the court declined to apply enhanced

*Laffey* rates).  The *Rooths* court further refused to apply enhanced *Laffey* rates, in part because it

found that the "[enhanced *Laffey*] matrix was generated using *national* statistics rather than

---

  [7]Plaintiff relies on *Friendship Edison Pub. Charter Sch. v. Suggs*, Civil Action No. 06-
1284, Motion for Attorneys' Fees of July 10, 2008 and Memorandum Opinion of March 30,
2009 at 5-8, but this case is inapposite because there was no challenge to the reasonableness of
the hours expended by counsel or the hourly rates in that case.

measurements particular to the District of Columbia area." 802 F. Supp.2d at 62 (emphasis in

original); *see also DL v. District of Columbia*, 256 F.R.D. 239, 243 (D.D.C. 2009) (because the

USAO [*Laffey*] Matrix accounts for price inflation within the local community, it more aptly

focuses on the relevant community than the [enhanced] *Laffey* Matrix based on the legal services

index). The *Rooths* court commented that "[w]hile it is doubtless true that some sectors of the

legal services industry have experienced rapid fee inflation in recent years, [it was] unconvinced

that fees associated with IDEA litigation in the District of Columbia have increased at the same

rate." 802 F. Supp. 2d at 62.

Recognizing the difficulty courts encounter in determining what are reasonable legal

fees, this Court agrees with the rationale set forth in *Rooths,* and finds that the Plaintiff's reliance

on an enhanced *Laffey* Matrix is unsupported because such Matrix does not provide an accurate

representation of District of Columbia legal fees applicable to IDEA cases. Nor has Plaintiff

demonstrated that IDEA litigation involving administrative hearings is the type of "complex

federal litigation" encompassed by the *Laffey* rates. *See McClam* v. *District of Columbia*, Civil

Action No. 11-381 (RMC), September 6, 2011 Memorandum Opinion at 8 (declining to apply

*Laffey* rates in part on grounds that "IDEA cases are generally not complex [and in that case,]

Plaintiffs . . . pointed to no novel issue or other complexity that turned this, particular IDEA

case into a complicated piece of litigation.")[8]

Defendant's argument against imposition of *Laffey* rates primarily focuses on the *Rooths*

and *McClam* decisions, *supra.* but the Defendant also asserts that "Plaintiffs have made no

---

[8]The *McClam* court acknowledged that "[f]ederal district courts in this circuit disagree
whether *Laffey* rates should be applied in IDEA cases." *McClam* Memorandum Opinion at 6
(citations omitted).

serious attempt to show that rates under the *Laffey* Matrix are appropriate in this case or, more specifically, that *Laffey* rates were necessary to attract competent counsel in the underlying, special education matters." (Opposition at 13.)[9]  Defendant further argues that there is no "inherent right to *Laffey* rates." (Opposition at 13 (citation omitted)); *see Lively v Flexible Packaging Assoc*., 930 A.2d 984, 990 (D.C. 2007) (accepting the *Laffey* Matrix as one legitimate means of calculating attorney's fees and using it as a starting point instead of an automatic application).  Federal courts do not automatically have to award *Laffey* rates but instead they can look at the complexity of the case and use their discretion to determine whether such rates are warranted.  *See Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1, 4-5 (D.D.C. 2005) ( awarding fees at a rate 25% less than *Laffey* in a "relatively straightforward negligence suit").

This Court follows the reasoning of the *Rooths* case and other cases declining to apply enhanced *Laffey* rates.  Considering that this is a straightforward case seeking IDEA legal fees, this Court concludes that the Plaintiff has failed to demonstrate that the hourly rates set by her counsel, which are based on enhanced *Laffey* rates, are reasonable.[10]  Such enhanced rates do not reflect what the local legal market will bear in terms of legal fees for IDEA litigation.  Using the [USAO] *Laffey* Matrix as a starting point for determination of a reasonable hourly rate, this Court determines that the hourly rate for Douglas Tyrka [attorney with 8-10 years experience)

---

[9]*See Kenny A. v. Perdue*, 130 S. Ct. 1662, 1672 (2010) "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case"); *see also Lively v. Flexible Packaging Association*, 930 A.2d 984, 990 (D.C. 2007) (cautioning that the goal of fee-shifting provisions is not to provide counsel with a windfall but to attract competent counsel).

[10]By statute the Court determines the reasonableness of the hourly rate for the legal fees. The negotiated legal fee hourly rate between the attorney and his client may be more or less than the hourly rate set by the Court.

would be $315.00; the hourly rate for Zachary Nahass [attorney with 2 years experience] would be $215.00 instead of $268.00, while the rate for paralegals Patrick Meehan and Camille McKenzie would be $125.00/$130.00 instead of $146.00/$150.00.

These rates should be further reduced however because the *Laffey* Matrix rates are the presumed maximum rates appropriate for "complex federal litigation," *Covington v. District of Columbia*, 57 F.3d at 1103, and IDEA litigation generally does not fall within that category.  The case at issue is no exception to that general rule insofar as it involves a routine administrative proceeding summarized in the Hearing Officer Determination dated December 19, 2007 and the time spent [billed] in preparation for the hearing was nominal.  (Itemization of Fees/Expenses.)  In such a case, an hourly rate below the *Laffey* Matrix rates is appropriate.  *See Wilson v. District of Columbia*, Civil Action No. 09-2258, 2011 WL 1428090, at *3 (D.D.C. Apr. 14, 2011) (*Laffey* Matrix is "not generally applicable to IDEA cases because they are not usually complex"); *A.C. ex rel. Clark v. District of Columbia*, 674 F.Supp.2d 149, 155 (D.D.C. 2009) (finding the USAO *Laffey* inapplicable in an IDEA case where "almost all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearing"); *Agapito v. District of Columbia*, 525 F.Supp.2d 150, 155 (D.D.C. 2007) (adjusting attorney fee award and declining to rely on the *Laffey* Matrix for these "relatively simple and straightforward IDEIA cases").  The Court will therefore award fees at an hourly rate equal to three-quarters of the USAO *Laffey* Matrix rate, which is $236.00 for Tyrka; $161.00 for Nahass and $94.00/98.00 for Meehan and McKenzie.[11]

---

[11]Defendant notes that a 25% reduction in *Laffey* Matrix rates brings these fees in line with its DCPS Fee Guidelines (Opposition at 15); however, it is not the intent of this Court to mirror the DCPS Fee Guidelines but instead to apply a percentage reduction that represents the

### C.  Costs

Plaintiff seeks an award of costs for fees charged by Sharon Millis, a special education

advocate with over 20 years experience, whose time is billed at $200.00 per hour for 2.5 hours.[12]

These costs in the amount of $50.00, relating to the services of a non-attorney educational

consultant, will be denied on grounds that they are not authorized under the IDEA.  *See*

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300 (2006) ("[T]he terms of the

IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs

of experts or consultants.")


### D. Fees Awarded

The amount of fees and costs requested by Plaintiff is $2,377.50. The legal fees claimed

were based on 3.0 hours billed at $475.00; 1.0 hour billed at $268.00/hour, .75 hour billed at

$146.00/hour and .5 hour billed at $150.00/hour.  This Court has determined that hourly rates

based on 75% of the *Laffey* Matrix rate are applicable, which means that 3.0 hours are billed at

$236.00/hour; 1.0 hour is billed at $161.00/hour, .75 hour is billed at $94.00/hour and .5 hour is

---

fact that most IDEA litigation [involving administrative proceedings] is not complex federal
litigation warranting the application of *Laffey* Matrix rates.

[12]According to Plaintiff's counsel, Ms. Millis "worked for parents full-time as an agent of
Tyrka & Associates, primarily attending school meetings, at which she assisted parents and
school officials in interpreting evaluations, developing individualized education programs,
developing compensatory education plans, and related tasks."  (Verified Statement of Douglas
Tyrka ("Tyrka") ¶17.) The Court notes that Millis billed time for two file reviews prior to MDT
meetings and attendance at both meetings.

billed at $98.00/hour.  Total fees thus equal $ 988.50.


DATED: May 23, 2012                    _____/s/_____
                                       ALAN KAY
                                       UNITED STATES MAGISTRATE JUDGE